# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| RODNEY CARROLL; TODD VAN DER JAGT; JERRY RAY; TONY JELINEK; STEPHEN ANDERSON; and FRED MINOR, *on behalf of themselves and others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> FLEXSTEEL INDUSTRIES, INC.; JERALD K. DITTMER; DERECK P. SCHMIDT; and UNNAMED FIDUCIARIES OF FLEXSTEEL'S ERISA-GOVERNED SEVERANCE PLAN, <br><br> Defendants. | 21-CV-1005-CJW-MAR <br><br><br> **ORDER** |

_____

## I. INTRODUCTION

This matter is before the Court on defendants' Motion to Dismiss the Employee Retirement Income Security Act of 1974 ("ERISA") Severance Pay Claims. (Doc. 18). Plaintiffs timely filed a resistance. (Doc. 22). Defendants timely filed a reply. (Doc. 27). For the following reasons, the Court **denies** defendants' motion.

## II. RELEVANT BACKGROUND

The following facts are taken from plaintiffs' Amended Complaint. (Doc. 13). Defendant Flexsteel Industries, Inc. ("Flexsteel") is a residential and commercial furniture manufacturer. (*Id.*, at 3, 7). Flexsteel formerly manufactured recreational vehicles but ceased doing so in April 2020. (*Id.*, at 7, 15). Defendant Jerald K. Dittmer ("Dittmer") is the Chief Executive Officer of Flexsteel. (*Id.*, at 3–4). Defendant Dereck

P. Schmidt is the Chief Financial Officer of Flexsteel. (*Id.*, at 4). Plaintiffs are all former employees of Flexsteel. (*Id.*, at 3).

On May 15, 2019, Flexsteel announced a broad corporate restructuring plan which entailed closing certain facilities, eliminating some production lines, and reducing its workforce. (*Id.*, at 7). In connection with that plan, "Flexsteel enacted and funded plans and policies for employee separations." (*Id.*). "Flexsteel's basic plan involved paying employees severance of one-week of base salary per year worked with a minimum of four-weeks base salary and a maximum of twenty-six weeks base salary." (*Id.*, at 8). Plaintiffs allege that Flexsteel's severance plan is contained in "a series of written documents, including but not limited to:" (1) Flexsteel's annual and quarterly reports to the Securities and Exchange Commission and its shareholders; (2) official communication from Flexsteel to its employees; (3) severance agreements and releases used in the severance plan prior to March 2020; and (4) other internal documents. (*Id.*, at 11–12). Flexsteel paid these severances out of its general fund. (*Id.*, at 7). Flexsteel ultimately paid millions in severance to terminated employees in 2019 and 2020. (*Id.*, at 8).

In May 2019, Flexsteel closed its Riverside, California facility and paid severance to employees who lost their jobs as a result. (*Id.*, at 8–9). Those employees also received a Worker Adjustment and Retraining Notification ("WARN") Act notice. (*Id.*, at 8). That same month, Flexsteel laid off an entire sector of employees at its Starkville, Mississippi facility (the "Starkville Facility"). (*Id.*, at 9). In June 2019, Flexsteel laid off approximately 50 employees throughout the company, all of whom received severance pay. (*Id.*). In August 2019, Flexsteel closed its Harrison, Arkansas facility and paid severance to employees who lost their jobs as a result. (*Id.*). That same month, Flexsteel also paid severance to a terminated employee from its Dubuque, Iowa facility (the "Dubuque Facility"). (*Id.*). In early 2020, Flexsteel terminated multiple employees, some of whom received severance pay. (*Id.*, at 10). Flexsteel did not pay severance to

all terminated employees, instead exercising its discretion in deciding whether the termination was performance-based. (*Id.*).

In mid-March 2020, the COVID-19 pandemic (the "Pandemic") officially reached the United States and had a profound impact on the economy. (*Id.*, at 14). On March 27, 2020, Flexsteel temporarily laid off 62 employees at the Dubuque Facility for three months due to the Pandemic. (*Id.*). On April 16, 2020, Flexsteel similarly reduced its workforce at the Starkville Facility for three months. (*Id.*, at 15). On April 28, 2020, Flexsteel notified its employees that it was immediately terminating its recreational vehicle business and permanently closing the Starkville Facility. (*Id.*, at 15). On April 30, 2020, Flexsteel similarly laid off employees at the Dubuque Facility and shutdown certain operations. (*Id.*, at 16). Flexsteel did not pay severance to any of the employees terminated at the Starkville or Dubuque Facilities in April 2020. (*Id.*, at 15–16). Flexsteel blamed the sudden closures on the Pandemic. (*Id.*). Plaintiffs allege that Flexsteel violated the severance plan and policies already in place and failed to provide employees with an adequate WARN notice. (*Id.*).

Plaintiffs also allege that Dittmer and Schmidt breached their fiduciary duties to the severance plan by, among other things, (1) refusing to pay severance benefits, (2) failing to give notice that they terminated the plan, (3) diverting money in the employee termination benefit fund to other funds to increase the stock price, (4) failing to adhere to plan documents which required severance payment, (5) interpreting plan documents contrary to the interests of the plan or its beneficiaries, and/or (6) engaging in self-dealing by purchasing stock for themselves and Flexsteel to the detriment of plan beneficiaries. (*Id.*, at 13).

On March 2, 2021, plaintiffs filed a Complaint against defendants in this Court. (Doc. 1). On May 3, 2021, defendants filed a motion to dismiss. (Doc. 11). On May 17, 2021, plaintiffs filed an Amended Complaint. (Doc. 13). Therein, plaintiffs assert,

3

on behalf of themselves and certain sub-classes, claims for (1) violation of ERISA, (2) violation of the WARN Act as to the Dubuque Facility, (3) violation of the WARN Act as to the Starkville Facility, and (4) violation of the Iowa Wage Payment Collection Act. (*Id.*, at 18–22). Now, under Federal Rule of Civil Procedure 12(b)(6), defendants request that the Court dismiss with prejudice plaintiffs' "ERISA severance claims . . ., including claims raised against" Dittmer and Schmidt related to breach of ERISA fiduciary duties. (Doc. 19, at 6–7).

### III.   APPLICABLE LAW

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . and a demand for the relief sought."

Rule 12(b)(6) provides that a party may assert the defense of failure to state a claim upon which relief can be granted by motion. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations, quotation marks, and alteration omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," but "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.* at 555–56. Indeed, a theory asserted need only be plausible, which requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the conduct alleged]." *Id.* at 556. In ruling on a Rule 12(b)(6) motion, the court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Simes v. Ark. Judicial*

4

*Discipline & Disability Comm'n*, 734 F.3d 830, 834 (8th Cir. 2013) (citation omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has *alleged*—but has not *shown*—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added) (citation and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* When a pleading contains no more than conclusions, however, those conclusions are not entitled to the assumption of truth. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "[T]here is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *Leimer v. State Mut. Life Assur. Co. of Worcester*, 108 F.2d 302, 306 (8th Cir. 1940).

"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted). A contract forming the basis for a claim for relief is "evidently embraced by the pleadings." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Thus, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

### IV. ANALYSIS

As to plaintiffs' ERISA severance claims, defendants argue (1) that the Amended Complaint "does not contain sufficient factual allegations to state a plausible claim that . . . Flexsteel established and maintained an ongoing severance plan" and (2) that even if

5

a severance plan existed, "there are insufficient factual allegations to state a plausible claim that [the plan] applied to [p]laintiffs." (Doc. 19, at 10, 18). Defendants separately argue that plaintiffs fail to state a claim for breach of fiduciary duty against Dittmer and Schmidt. (*Id.*, at 20). The Court will address each argument in turn.

### A. *Existence of an ERISA Plan*

ERISA aims to, among other things, protect employee interests in pension and welfare plans. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990). In relevant part, ERISA "empowers a participant or beneficiary of an ERISA plan to bring a civil action to recover benefits due to him under the terms of his plan." *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 931 (8th Cir. 1999). "A plan is established for ERISA purposes when a reasonable person can ascertain (1) the intended benefits, (2) the class of beneficiaries, (3) a source of funding, and (4) the procedures for receiving benefits." *Petersen v. E.F. Johnson Co.*, 366 F.3d 676, 678 (8th Cir. 2004) (citation omitted).

Under ERISA, an "'employee welfare benefit plan' is described as any plan, fund, or program established or maintained by an employer . . . to the extent that such plain, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries specified benefits." *Boyles v. Metso Minerals Indus., Inc.*, No. C02-0162, 2003 WL 21542338, at *3 (N.D. Iowa Mar. 5, 2003) (citing 29 U.S.C. § 1002(1)). "Such benefits may include severance benefits." *Id.* (citing *Wallace v. Firestone Tire & Rubber Co.*, 882 F.2d 1327, 1329 (8th Cir. 1989)). Not every policy that includes the payment of severance benefits, however, is necessarily an ERISA plan. *Id.* Rather, "ERISA regulates only those 'benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligations.'" *Id.* (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987)). If the severance plan is not an ERISA employee welfare benefit plan, "there is no federal jurisdiction." *Id.* (quoting

6

*Emmenegger*, 197 F.3d at 931). To determine whether an "ongoing administrative scheme" exists, courts in the Eighth Circuit consult the following factors:

> (1) whether the payments are one-time, lump sum payments or continuous, periodic payments; (2) whether the employer undertook any long-term obligation with respect to the payments; (3) whether the severance payments are triggered by a single event, such as a plant closing, or are continuous payments to be made generally to terminated employees; and (4) whether the severance arrangement requires the employer to engage in a case-by-case review of employees to determine their particular eligibility based on the applicable criteria.

*Id.*, at *4 (citing *Crews v. Gen. Am. Life Ins. Co.*, 274 F.3d 502, 506 (8th Cir. 2001)). This analysis has been described as a "fact-intensive inquiry." *Id.*, at *3.

Defendants argue that their payment of severance to some employees did not create an ongoing obligation to pay severance to all terminated employees. (Doc. 19, at 12–13). First, defendants argue that plaintiffs fail to allege the existence of a written plan document as required under ERISA. (*Id.*, at 14–15) (citing 29 U.S.C. §§ 1021, 1102(a)(1)). Second, defendants argue that plaintiffs' allegations describe only a single severance payment given to other employees, not an ongoing scheme of payments. (*Id.*, at 16). Third, defendants argue that the facts alleged show only that Flexsteel paid severance in relation to single, unique events, not to every terminated employee. (*Id.*). Last, defendants argue that plaintiffs' admission that Flexsteel exercised discretion in paying severance to certain employees is entirely inconsistent with the existence of an ongoing obligation to pay severance to terminated employees. (*Id.*, at 17).

Plaintiffs counter that the documents they have identified are sufficient at this stage to constitute a written plan under ERISA. (Doc. 22, at 7). Moreover, plaintiffs assert that defendants' severance plan here was an ongoing administrative scheme. (*Id.*, at 8–9). Plaintiffs conclude that they had a "reasonable expectation" that Flexsteel would continue to pay severance. (*Id.*, at 9).

7

Although defendants thoroughly compiled and discussed relevant authority, none of the cases cited are procedurally on-point. *See Crews*, 274 F.3d at 504 (appeal from grant of motion for summary judgment); *Emmenegger*, 197 F.3d at 931 (appeal from denial of motion to dismiss for lack of subject matter jurisdiction); *Warren v. Snap-On, Inc.*, No. Civ.A.4:05-CV-22-M, 2005 WL 1828889, at *1 (W.D. Ky. Aug. 1, 2005) (ruling on motion to remand); *Rosati v. Cleveland-Cliffs, Inc.*, 259 F. Supp. 2d 861, 864 (D. Minn. 2003) (ruling on cross-motions for summary judgment); *Boyles*, 2003 WL 21542338, at *1 (ruling on a motion to remand); *Gilmore v. Silgan Plastics Corp.*, 917 F. Supp. 685, 686 (E.D. Mo. 1996) (ruling on motion for summary judgment). Here, defendants' move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). This is an important distinction because defendants' motion to dismiss rests on a fact-intensive inquiry at a stage where the Court must accept plaintiffs' pleaded facts as true and grant all reasonable inference in their favor. That said, some courts have granted similar motions under Rule 12(b)(6) where a plaintiff "failed to allege the existence of an ERISA plan." *Grossman v. Ventressca*, No. 07-1545, 2008 U.S. Dist. LEXIS 15611, at *16–18 (D.N.J. Feb. 28, 2008) (citing *Frommer v. Celanese Corp.*, No. 07-4066 (GEB)(JJH), 2007 WL 3408275, at *3–4 (D.N.J. Nov. 15, 2007)); *see also Brennan v. Cephalon, Inc.*, No. Civ.A. 04-3241(FLW), 2005 WL 2807195, at *16 (D.N.J. Oct. 25, 2005) ("Plaintiff makes no allegations having to do with the benefits, beneficiaries, administrator, funding, procedures, intentions of [the defendant] and involvement of [the defendant] with regard to the alleged plan. As such, the Court finds that Plaintiff has failed to plead the existence of an official or unofficial ERISA plan.").

The Court finds plaintiffs' allegations, accepting them as true and drawing all reasonable inferences in plaintiffs' favor, are sufficient at this stage to state a claim. Plaintiffs allege the existence of several written documents which, individually or

collectively, comprise the written plan. (Doc. 13, at 11–12). Plaintiffs allege these documents contained all the necessary information to constitute such a plan. *See Petersen*, 366 F.3d at 678. Defendants' argument that there was no ongoing administrative program relies on a factual analysis of whether Flexsteel only made lump sum severance payments in relation to unique events and what effect that might have on the status of the alleged benefits scheme. That analysis is better reserved for a later, fact-intensive stage of this case. Further, plaintiffs allege that Flexsteel undertook other ongoing obligations which could weigh toward a finding that there was an ongoing administrative program in place. *See* (Doc. 22, at 4). This conclusion may also be consistent with plaintiffs' allegations that severance was paid under the ERISA plan on a case-by-case basis based on eligibility. *See Boyles*, 2003 WL 2154338, at *5 (holding there was no ongoing administrative program in part because "the payment of severance benefits . . . did not require the defendant to engage in any sort of case-by-case analysis of employees to determine their particular eligibility"). In sum, defendants' arguments rely too heavily on an interpretation of the facts and are premature. Accepting the facts pled as true, it is plausible that an ERISA plan existed here.

For these reasons, the Court finds dismissal of plaintiffs' ERISA severance claims inappropriate on this basis.

### B. *Applicability of the ERISA Plan to Plaintiffs*

Even if an ERISA plan existed here, defendants argue that plaintiffs fail to allege that the plan applied to plaintiffs specifically. (*Id.*, at 15, 17, 18). Defendants further argue they were within their discretion to stop offering severance benefits under ERISA, particularly in light of the Pandemic. (*Id.*, at 18–20).

Plaintiffs counter that "[o]nce [an ERISA] plan exists, all employees who meet the qualifications are included." (Doc. 22, at 9–10). Plaintiffs argue they qualified for

9

severance benefits because they were in good standing and lost their jobs through Flexsteel's restructuring scheme. (*Id.*, at 10).

The Court similarly finds this issue to be a fact-intensive inquiry better suited for a later stage of this case. Again, accepting plaintiffs' allegations as true, there was an ERISA plan containing severance benefits in place in relation to Flexsteel's broad restructuring of its business, the plan was contained in several written documents that were communicated to employees, the plan applied to plaintiffs and they were eligible for severance benefits due to their termination in relation to the restructuring initiative, and defendants failed to pay the benefits. Whether plaintiffs were actually entitled to such benefits, whether defendants properly exercised their discretion in denying benefits, and what impact the Pandemic had on these decisions are all factual questions that the Court cannot properly consider here.

For these reasons, the Court finds dismissal of plaintiffs' ERISA severance claims inappropriate on this basis.

### C. *Breach of Fiduciary Duty as to Dittmer and Schmidt*

Defendants also argue that plaintiffs fail to state a claim for breach of fiduciary duty under ERISA against Dittmer and Schmidt. (Doc. 19, at 20–25). Defendants argue that plaintiffs fail to allege that Dittmer and Schmidt are identified in any plan document as ERISA fiduciaries. (*Id.*, at 22). Defendants further argue that there is no allegation that Dittmer and Schmidt breached any fiduciary duty. (*Id.*, at 23–24).

Plaintiffs counter that Dittmer and Schmidt, as the CEO and CFO respectively, exercised authority over the severance plan, thus making them fiduciaries. (Doc. 22, at 10–11). Plaintiffs also list the ways in which Dittmer and Schmidt allegedly breached their duties. (*Id.*, at 11–12).

Title 29, United States Code, Section 1002(21)(A) defines an ERISA plan fiduciary as a person who "exercises any discretionary authority or discretionary control

10

respecting management of such a plan or exercises any authority or control respecting management or disposition of its assets," renders investment advice in relation to the plan, or "has any discretionary authority or discretionary responsibility in the administration of such plan." Indeed, "[d]iscretion is the benchmark for fiduciary status under ERISA[.]" *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 632 (8th Cir. 2001) (citation and internal quotation marks omitted). Courts in the Eighth Circuit construe the term "fiduciary" broadly. *Olson v. E.F. Hutton & Co.*, 957 F.2d 622, 625 (8th Cir. 1992) (citing *Consol. Beef Indus. v. N.Y. Life Ins. Co.*, 949 F.2d 960, 963 (8th Cir. 1991)). This broad construction "imposes fiduciary status upon those who act like fiduciaries as well as those who actually are fiduciaries." *Id.* (citing *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812–13 (2d Cir. 1987) ("[W]hether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than the title held."). In other words, the absence of a grant of actual authority to act as a fiduciary is not dispositive. *Id.*

Defendants' first argument fails because Dittmer and Schmidt may be held liable even if they were not actually granted authority to act as fiduciaries so long as they exercised discretion in performing fiduciary functions. Thus, plaintiffs need not plead that the two were named in any particular plan document. Plaintiffs' Amended Complaint plausibly alleges that Dittmer and Schmidt, in their corporate roles, exercised discretionary control over the ERISA severance plan and details how the two allegedly breached their fiduciary duties. (Doc. 13, at 13). These detailed allegations also dispense with defendants' second argument that no breaches were alleged here. In sum, plaintiffs' allegations are sufficient at this stage to fend off dismissal.

For these reasons, the Court finds dismissal of plaintiffs' breach of fiduciary duty claims inappropriate.

11

## V. CONCLUSION

For these reasons, the Court **denies** defendants' motion to dismiss. (Doc. 18).

**IT IS SO ORDERED** this 5th day of August, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa