# CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Settlement Agreement") is entered into between and among the Class Representatives, all Class Members, and the Defendants.

1.    **Article 1 – Recitals**

1.1    On March 2, 2021, Rodney Carroll, Todd Van Der Jagt, Jerry Ray, Tony Jelinek, Stephen Anderson, and Fred Minor (collectively, "Named Plaintiffs"), filed this action on behalf of themselves and other similarly situated against Flexsteel Industries, Inc., Jerald K. Dittmer, Derek P. Schmidt, and unnamed fiduciaries of Flexsteel's alleged ERISA-governed Severance Plan (collectively, "Defendants"), in the United States District Court for the Northern District of Iowa, raising various claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, the Worker Adjustment and Retraining Notification Act of 1988 ("WARN"), and the Iowa Wage Payment Collection Act ("Iowa Wage Law"). On May 17, 2021, the Named Plaintiffs filed their First Amended Complaint ("FAC") and on October 15, 2021, the Named Plaintiffs filed their Second Amended Complaint ("SAC").

1.2    On May 3, 2021, Defendants filed a motion to dismiss the Named Plaintiffs' claims under ERISA. After the Named Plaintiffs filed their FAC, Defendants renewed their motion to dismiss. The Court denied Defendants' motion on August 5, 2021. In the meantime, the parties jointly submitted a proposed scheduling plan on June 16, 2021. The Court entered a scheduling order on June 25, 2021. The parties then engaged in substantive written discovery consisting of the following: Defendants' First Set of Interrogatories and Requests for Production to Plaintiffs; Plaintiffs' First Discovery Requests; Plaintiffs' Second Request for Production of Documents; and Plaintiffs' Third Discovery Requests.

1.3    As part of the discovery process, the parties  discussed electronic discovery, including stipulations regarding custodians and search terms. Appling these stipulations, preliminary data revealed that the volume of potential electronic discovery would include over 24,000  documents with hits, including family. Defendants and the Named Plaintiffs estimated that the costs of proceeding with electronic discovery would be substantial.

1.4    Given the potential costs of electronic discovery and the potential value or lack thereof of investing in such discovery, the parties agreed to settlement discussions. The parties retained a private mediator who has extensive experience in ERISA and other employment-related issues. A mediation was held on December 3, 2021. Named Plaintiffs Rodney Carroll and Todd Van

1

Der Jagt were present, along with their counsel, Dorothy O'Brien and Kelsey Marquard. Defendants were present, along with other executives of Flexsteel and their counsel, Mark Schmidtke and Jesse Dill. The mediation lasted more than 10 hours, which does not include pre-mediation submissions and discussions.

1.5 Through extensive discussions in mediation, the parties reached an agreement. The terms of the parties' settlement are memorialized in this Settlement Agreement.

1.6 The Plaintiff Class Representatives and Plaintiffs' Class Counsel consider it desirable and in the Class Members' best interests that the claims against Defendants, which constitute a *bona fide* dispute, be settled on behalf of the Class Representatives and the Class upon the terms set forth below, and they have concluded that such terms are fair, reasonable, and adequate and that this Settlement will result in benefits to Class Representatives and the Class.

1.7 Defendants admit no wrong doing or liability with respect to any of the allegations or claims in the Complaint. This Settlement Agreement, and the discussions between the settling parties preceding it, shall in no event constitute, be construed as, or be deemed evidence of, an admission or concession of fault or liability of any kind by any defendants named in the Complaint and identified in the Settlement Agreement.

1.8 The Settling Parties, as defined below, have concluded that it is desirable that this matter be finally settled upon the terms and conditions set forth in this Settlement Agreement.

1.9 Therefore, the Settling Parties, in consideration of the agreements, acknowledged by each of them to be satisfactory, and intending to be legally bound, agree to the terms of this Settlement Agreement.

## 2. Article 2 – Definitions

As used in this Settlement Agreement and its Exhibits (as listed in Paragraph 12.18), unless otherwise defined, the following terms have these meanings:

2.1 "Administrative Expenses" means expenses incurred in the administration of this Settlement Agreement, including (a) all fees, expenses, and costs associated with providing the Settlement Notices to the Class; (b) related tax expenses (including taxes and tax expenses as described in Paragraph 5.3); and (c) all fees, expenses, and costs associated with providing notices required by the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711–1715. Excluded from Administrative Expenses are Defendants' internal expenses and the Settling Parties' respective legal expenses. Administrative Expenses shall be paid from the Gross Settlement Amount.

2

**2.2** "Attorneys' Fees and Costs" means the amount awarded by the Court as compensation for the services provided by Class Counsel and to be provided in the future during the Settlement Period. The amount of attorneys' fees and costs for Class Counsel shall not exceed $425,000 which shall be recovered from the Gross Settlement Amount. This amount includes litigation costs of $3770 and $5,000 of the cost of class administration.

**2.3** "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711–1715.

**2.4** "Class Action" means *Rodney Carroll, et al., Plaintiffs v. Flexsteel Industries, Inc., et al., Defendants*, Case No. 2:21-cv-01005-CJW-MAR, in the United States District Court for the Northern District of Iowa.

**2.5** "Class Counsel" means O'Brien & Marquard, P.L.C., 2322 East Kimberly Road, Suite 140S, Davenport, IA 52807.

**2.6** "Class Members" means all individuals in the Settlement Class.

**2.7** "Class Period" means the period from January 1, 2020 through December 3, 2021.

**2.8** "Class Representatives" means Rodney Carroll, Todd Van Der Jagt, Jerry Ray, Tony Jelinek, Stephen Anderson, and Fred Minor.

**2.9** "Class Representatives' Compensation" means an amount to be determined by the Court. The class counsel is recommending $2,000 each for Fred Minor, Tony Jelinek, Stephen Anderson and Jerry Ray and $8500 each for Todd Van Der Jagt and Rodney Carroll. This will be paid from the Gross Settlement Amount.

**2.10** "Court" means the United States District Court for the Northern District of Iowa.

**2.11** "Court of Appeals" means the United States Court of Appeals for the Eighth Circuit.

**2.12** "Defendants" means Flexsteel Industries, Inc., Jerald K. Dittmer, Derek P. Schmidt, and unnamed fiduciaries of Flexsteel's ERISA-governed Severance Plan.

**2.13** "Defense Counsel" means counsel for Defendants, including Ogletree, Deakins, Nash Smoak & Stewart, P.C.

**2.14** "Escrow Agent" means Commerce Bank, or another entity agreed to by the Settling Parties.

3

**2.15** "Fairness Hearing" means the hearing scheduled by the Court to consider (a) any objections from Class Members to the Settlement Agreement, (b) Class Counsel's petition for Attorneys' Fees and Costs and Class Representatives' Compensation, and (c) whether to finally approve the Settlement under Fed. R. Civ. P. 23.

**2.16** "Final Approval" means the entry of the order and final judgment approving the Settlement Agreement, implementing the terms of this Settlement Agreement, and dismissing the Class Action with prejudice, to be proposed by the Settling Parties for approval by the Court.

**2.17** "Final Order" means thirty days after Final Approval.

**2.18** "Final" means with respect to any judicial ruling, order, or judgment that the period for any motions for reconsideration, motions for rehearing, appeals, petitions for certiorari, or the like ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that it has been fully and finally resolved, either by court action or by voluntary action of any party, without any possibility of a reversal, vacatur, or modification of any judicial ruling, order, or judgment, including the exhaustion of all proceedings in any remand or subsequent appeal and remand. The Settling Parties agree that absent an appeal or other attempted review proceeding, the period after which the Final Order becomes Final is thirty (30) calendar days after its entry.

**2.19** "Flexsteel" means Flexsteel Industries, Inc.

**2.20** "Gross Settlement Amount" means the sum of One Million Two Hundred Seventy-Five Thousand and no/100 Dollars ($1,275,000.00), contributed to the Qualified Settlement Fund in accordance with Article 5. The Gross Settlement Amount shall be the full and sole monetary payment to the Settlement Class, Plaintiffs, and Class Counsel made on behalf of Defendants in connection with the Settlement effectuated through this Settlement Agreement.

**2.21** "Mediator" means Edwin Oster, Judicate West, 1851 E. First Street, Suite 1600, Santa Ana, California 92705, or if he is unavailable, another mediator mutually agreed upon by the Settling Parties.

**2.22** "Net Settlement Amount" means the Gross Settlement Amount minus: (a) all Attorneys' Fees and Costs paid to Class Counsel; (b) all Class Representatives' Compensation as authorized by the Court; (c) all Administrative Expenses; and (d) a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties that is set aside by the Settlement Administrator for: (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated to be incurred after the Settlement Effective Date but before the end of the Settlement Period, and (3) an amount estimated for adjustments of data or calculation errors.

4

**2.23** "Plaintiffs" means the Class Representatives and the Class Members.

**2.24** "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Amount in accordance with Article 6 herein.

**2.25** "Preliminary Order" means the order proposed by the Settling Parties and approved by the Court in connection with the Motion for Entry of the Preliminary Order to be filed by Class Representatives through Class Counsel, as described in Paragraph 3.1 and in substantially the form attached hereto as Exhibit 2.

**2.26** "Protective Order" means the Stipulated Protective Order entered by the Court on June 29, 2021 at Dkt. 28 in Case No. 2:21-cv-01005-CJW-MAR.

**2.27** "Qualified Settlement Fund" or "Settlement Fund" means the interest-bearing, settlement fund account to be established and maintained by the Escrow Agent in accordance with Article 5 herein and referred to as the Qualified Settlement Fund (within the meaning of Treas. Reg. § 1.468B-1).

**2.28** "Released Parties" means (a) each Defendant, (b) each Defendant's past, present, and future parent corporation(s), (c) each Defendant's past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns, and (d) each employee pension and welfare benefit plan established and/or maintained by Flexsteel Industries, Inc. or its past, present, and future parent corporations and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns, and (e) with respect to (a) through (d) above, all of their affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, assigns, employee benefit plan fiduciaries, administrators, service providers (including their owners and employees), consultants, subcontractors, boards of trustees, boards of directors, officers, trustees, directors, partners, agents, managers, members, employees, independent contractors, representatives, attorneys, administrators, fiduciaries, insurers, co-insurers, reinsurers, accountants, auditors, advisors, consultants, personal representatives, spouses, heirs, executors, administrators, associates, members of their immediate families, and all persons acting under, by, through, or in concert with any of them.

**2.29** "Released Claims" means any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action:

**2.29.1** That were asserted in the Class Action, or that arise out of the conduct alleged in the Complaint, the FAC, and the SAC, whether or not pleaded in the Complaint, the FAC, or the SAC;

**2.29.2** That would be barred by the doctrines of claim preclusion and/or issue preclusion based on entry of the Final Order;

5

**2.29.3**   That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Plan or any member of the Settlement Class in accordance with the Plan of Allocation; or

**2.29.4**   "Released Claims" specifically exclude (1) those claims not related to 2.29.1 – 2.40.4 above; (2) labor or employment claims, including by way of example only, claims arising under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Equal Pay Act, 42 U.S.C. § 1981, the Fair Labor Standards Act, the Family and Medical Leave Act, the National Labor Relations Act, the Sarbanes Oxley Act, the Dodd-Frank Wall Street Reform and Protection Act, state anti-discrimination and wage-payment laws, claims for wrongful termination under state common law and other state law claims of a similar nature to those set forth in this subpart 2.30.4; and (4) claims arising from conduct outside the Class Period.

**2.30**   "Settlement" or "Settlement Agreement" refers to the agreement embodied in this agreement and its exhibits.

**2.31**   "Settlement Administrator" means an independent contractor to be retained by Class Counsel.

**2.32**   "Settlement Agreement Execution Date" means that date on which the final signature is affixed to this Settlement Agreement.

**2.33**   "Settlement Class" means all United States based permanent employees of Flexsteel whose employment was terminated as a result of Flexsteel restructuring/downsizing/facility closure at any time during the period of January 1, 2020 through December 3, 2021, excluding individuals who signed releases and individuals on temporary assignment at Flexsteel.

**2.34**   "Settlement Effective Date" means the date on which the Final Order is Final, provided that by such date the Settlement has not been terminated in accordance with Article 11.

**2.35**   "Settlement Notice" means the Notices of Class Action Settlement and Fairness Hearing to be mailed by first class mail to Class Members identified by the Settlement Administrator following the Court's issuance of the Preliminary Order, in substantially the form attached hereto as Exhibits 3 and 4. The Settlement Notice also shall inform Class Members of a Fairness Hearing to be held before the Court, on a date to be determined by the Court, at which any Class Member satisfying the conditions set forth in the Preliminary Order and the Settlement Notice may be heard regarding: (a) the terms of the Settlement Agreement; (b) the petition of Class Counsel for award of Attorneys' Fees and Costs; (c) payment of and reserve for Administrative Expenses; and (d) Class Representatives' Compensation.

6

**2.36**   "Settlement Website" means the internet website established in accordance with Paragraph 11.2.

**2.37**   "Settling Parties" means the Defendants and the Class Representatives, on behalf of themselves and each of the Class Members.

**3.**    **Article 3 – Preliminary Settlement Approval and Notice to the Class**

**3.1**   Class Representatives, through Class Counsel, will file with the Court motions seeking preliminary approval of this Settlement Agreement, class certification for settlement purposes only, and for entry of the Preliminary Order in substantially the form attached hereto as Exhibit 2. Defendants will promptly thereafter file a statement of non-opposition to these motions. The Proposed Preliminary Order to be presented to the Court, as to the Class Action, shall, among other things:

**3.1.1**   Grant the motion to certify the class for settlement purposes only;

**3.1.2**   Approve the text of the Settlement Notice for mailing to Class Members identified by the Settlement Administrator to notify them (1) of the Fairness Hearing and (2) that notice of changes to the Settlement Agreement, future orders regarding the Settlement, modifications to the Class Notice, changes in the date or timing of the Fairness Hearing, or other modifications to the Settlement, including the Plan of Allocation, may be provided to the Class through the Settlement Website without requiring additional mailed notice;

**3.1.3**   Determine that under Rule 23(c)(2) of the Federal Rules of Civil Procedure, the Settlement Notices constitute the best notice practicable under the circumstances, provide due and sufficient notice of the Fairness Hearing and of the rights of all Class Members, and comply fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable law;

**3.1.4**   Cause the Settlement Administrator to mail by first class mail the Settlement Notice to each Class Member identified by the Settlement Administrator;

**3.1.5**   Provide that, pending final determination of whether the Settlement Agreement should be approved, no Class Member may directly, through representatives, or in any other capacity, commence any action or proceeding in any court or tribunal asserting any of the Released Claims against the Defendants, or the Released Parties;

**3.1.6**   Set the Fairness Hearing for no sooner than ninety (90) calendar days after the date the Motion for Entry of the Preliminary Order is filed, in order to determine whether (i) the Court should approve the Settlement as fair, reasonable, and adequate, (ii) the Court should enter the Final

7

Order, and (iii) the Court should approve the application for Attorneys' Fees and Costs, Class Representatives' Compensation, Administrative Expenses incurred to date, and a reserve for anticipated future Administrative Expenses;

**3.1.7**     Provide that any objections to any aspect of the Settlement Agreement shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been filed validly with the Clerk of the Court and copies provided to Class Counsel and Defense Counsel. To be filed validly, the objection and any notice of intent to appear or supporting documents must be filed at least thirty (30) days prior to the scheduled Final Approval Hearing. Any person wishing to speak at the Fairness Hearing shall file and serve a notice of intent to appear within the time limitation set forth above;

**3.1.8**     Provide that the Settling Parties may, but are not required to, serve discovery requests, including requests for documents and notices of deposition not to exceed two (2) hours in length, on any objector within ten (10) days of receipt of the objection and that any responses to discovery or depositions must be completed within ten (10) days of the discovery request being served on the objector;

**3.1.9**     Provide that any party may file a response to an objection by a Class Member at least ten (10) days before the Fairness Hearing;

**3.1.10**    Provide that the Fairness Hearing may, without further direct notice to the Class Members, other than by notice to Class Counsel, be adjourned or continued by order of the Court.

3.1.11   Provide that anyone wishing to opt out of the settlement do so no later than 30 days after the postmarked date of the postcard(short form) notice.

**3.2**      Defense Counsel shall respond timely to written requests, including by e-mail, from the Settlement Administrator for readily accessible data that are reasonably necessary to determine the feasibility of administering the Plan of Allocation or to implement the Plan of Allocation. The actual and reasonable expenses of any third party that are necessary to perform such work shall be Administrative Expenses to be deducted from the Gross Settlement Amount.

**3.2.1**     The Settlement Administrator shall be bound by the Protective Order and any further non-disclosure or security protocol required by the Settling Parties.

**3.2.2**     The Settlement Administrator shall use the data provided by Defendants solely for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.

8

**3.2.3** The Settling Parties shall have the right to approve a written protocol to be provided by the Settlement Administrator concerning how the Settlement Administrator will maintain and store information provided to it in order to ensure that reasonable and necessary precautions are taken to safeguard the privacy and security of such information.

**3.3** By the date and in the manner set by the Court in the Preliminary Order, and unless otherwise set forth below, the Settlement Administrator shall:

**3.3.1** Cause to be mailed to each Class Member identified by the Settlement Administrator a Settlement Notice in the form and manner to be approved by the Court, which shall be in substantially the form attached hereto as Exhibit 1 or a form subsequently agreed to by the Settling Parties and the Court. The Settlement Notice shall be sent by first-class mail, postage prepaid, to the last known address of each Class Member provided through Defense Counsel, unless an updated address is obtained by the Settlement Administrator through its efforts to verify the last known addresses. Class Counsel also will post a copy of the postcard Settlement Notice and a longer form notice on the Settlement Website. The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Settlement Notice is returned and re-mail such documents one additional time.

**3.3.2** Have prepared and provided CAFA notices to the Attorney General of the United States, the Secretary of the Department of Labor, and the Attorneys General of all states in which members of the Class reside, as specified by 28 U.S.C. § 1715, within ten (10) calendar days of Class Representatives' filing of the Settlement Agreement and proposed Preliminary Order. Subject to Court approval, the costs of such notice shall be paid from the Qualified Settlement Fund and shall be considered Administrative Expenses.

**4. Article 4 – Final Settlement Approval**

**4.1** No later than ten (10) business days before the Fairness Hearing, Class Counsel and Defense Counsel shall submit to the Court a mutually agreed upon motion for entry of the Final Order (Exhibit 5), which shall request approval by the Court of the terms of this Settlement Agreement and entry of the Final Order in accordance with this Settlement Agreement. The Final Order as proposed by the Settling Parties shall provide for the following, among other things, as is necessary to carry out the Settlement consistent with applicable law and governing Plan documents:

**4.1.1** Approval of the Settlement of the Released Claims covered by this Settlement Agreement adjudging the terms of the Settlement Agreement to be fair, reasonable, and adequate to the Plan and the Class Members

9

and directing the Settling Parties to take the necessary steps to effectuate the terms of the Settlement Agreement;

4.1.2    A determination under Rule 23(c)(2) of the Federal Rules of Civil Procedure that the Settlement Notice constitutes the best notice practicable under the circumstances and that due and sufficient notice of the Fairness Hearing and the rights of all Class Members has been provided;

4.1.3    Dismissal with prejudice of the Class Action and all Released Claims asserted therein whether asserted by Class Representatives on their own behalf or on behalf of the Class Members, or derivatively to secure relief for the Plan, without costs to any of the Settling Parties other than as provided for in this Settlement Agreement, except for retention of jurisdiction to enforce Article 8 of the Settlement Agreement;

4.1.4    That each Class Member and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns, shall be (i) conclusively deemed to have, and by operation of the Final Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged Defendants, the Plan, and the Released Parties from all Released Claims, and (ii) barred from suing Defendants or the Released Parties in any action or proceeding alleging any of the Released Claims, even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Class Action and the Released Claims,  whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed;

4.1.5    That each Class Member (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be (i) conclusively deemed to have, and by operation of the Final Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged Defendants and the Released Parties from all Released Claims, and (ii) barred from suing Defendants or the Released Parties in any action or proceeding alleging any of the Released Claims, even if any Class Member may thereafter discover facts in addition to or different from those which any Class Member now knows or believes to be true with respect to the Class Action and the Released Claims;

4.1.6    That each Class Member shall release Defendants, Defense Counsel, Class Counsel, and the Released Parties for any claims, liabilities, and

10

attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax, benefit, unemployment, and similar liability and associated penalties and interest as well as related attorneys' fees and expenses;

**4.1.7**    That all applicable CAFA requirements have been satisfied;

**4.1.8**    That the Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Class Member in accordance with the Plan of Allocation approved by the Court;

**4.1.9**    That within twenty-one (21) calendar days following the issuance of all settlement payments to Class Members as provided by the Plan of Allocation approved by the Court, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel a list of each person who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of such payment or contribution.

**4.2**    The final order and judgment entered by the Court approving the Settlement Agreement shall provide that upon its entry all Settling Parties, the Settlement Class, and the Plan shall be bound by the Settlement Agreement and by the final order.

## 5.    Article 5 – Establishment of Qualified Settlement Fund

**5.1**    No later than three (3) business days after entry of the Preliminary Order, the Escrow Agent shall establish an escrow account. The Settling Parties agree that the escrow account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent timely shall make such elections as necessary or advisable to carry out the provisions of this Paragraph 5.1, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

**5.2**    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a Taxpayer Identification Number for the Fund and filing the returns described in Treas. Reg. § 1.468B-2(k)).

11

Such returns as well as the election described in Paragraph 5.1 shall be consistent with this Article 5 and, in all events, shall reflect that all taxes (as defined in Paragraph 5.3 below) (including any estimated taxes, interest, or penalties) on the income earned by the Gross Settlement Amount shall be deducted and paid from the Gross Settlement Amount as provided in Paragraph 5.3 hereof.

5.3     Taxes and tax expenses are Administrative Expenses to be deducted and paid from the Gross Settlement Amount, including but not limited to: (1) all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Gross Settlement Amount, including any taxes or tax detriments that may be imposed upon Defendants or Defense Counsel with respect to any income earned by the Gross Settlement Amount for any period during which the Gross Settlement Amount does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (2) all tax expenses and costs incurred in connection with the operation and implementation of this Article 5 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Article 5). Such taxes and tax expenses shall be Administrative Expenses and shall be paid timely by the Escrow Agent out of the Gross Settlement Amount without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Class Member any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)); neither Defendants, Defense Counsel, nor Class Counsel are responsible nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Article 5.

5.4     Within five (5) business days after the later of (a) the Preliminary Order is entered, or (b) the escrow account described in Paragraph 5.1 is established and the Escrow Agent shall have furnished to Defendants in writing the escrow account name, IRS W-9 Form, and all necessary wiring instructions, Defendants, or their agents or insurers, will deposit the Gross Settlement Amount, One Million Two Hundred Seventy-Five Thousand and no/100 Dollars ($1,275,000.00), into the Qualified Settlement Fund.

5.5     The Escrow Agent shall, at the written direction of Class Counsel, invest the Qualified Settlement Fund in short-term United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

12

**5.6**   The Escrow Agent shall not disburse the Qualified Settlement Fund or any portion except as provided in this Settlement Agreement, in an order of the Court, or in a subsequent written stipulation between Class Counsel and Defense Counsel. Subject to the orders of the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

**5.7**   Within one-hundred twenty (120) calendar days after the Settlement Effective Date, the Gross Settlement Amount will be distributed from the Qualified Settlement Fund as follows: (a) first, all Attorneys' Fees and costs shall be paid to Class Counsel within three (3) business days after the Settlement Effective Date; (b) second, all Administrative Expenses not paid previously shall be paid within five (5) business days after the Settlement Effective Date; (c) third, any Class Representatives' Compensation ordered by the Court shall be paid within five (5) business days after the Settlement Effective Date; (d) fourth, a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties shall be set aside by the Settlement Administrator for: (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated to be incurred after the Settlement Effective Date but before the end of the Settlement Period, (3) an amount estimated for adjustments of data or calculation errors, and (e) fifth, the Net Settlement Amount will be distributed in accordance with the Plan of Allocation. Pending final distribution of the Net Settlement Amount in accordance with the Plan of Allocation, the Escrow Agent will maintain the Qualified Settlement Fund.

**5.8**   The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it. Defendants, Defense Counsel, and/or Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

**5.9**   No later than February 15 of the year following the calendar year in which Defendants, their insurers, or agents make a transfer to the Qualified Settlement Fund in accordance with the terms of this Article 5, Defendants, their insurers, or agents shall timely furnish a statement to the Escrow Agent, or the Settlement Administrator on its behalf, that complies with Treas. Reg. § 1.468B-3(e)(2), which may be a combined statement under Treas. Reg. § 1.468B3(e)(2)(ii), and shall attach a copy of the statement to their federal income tax returns filed for the taxable year in which Defendants, their insurers, or agents make a transfer to the Qualified Settlement Fund.

13

**6.** **Article 6 – Plan of Allocation**

**6.1** After the Settlement Effective Date, the Settlement Administrator shall allocate and distribute the Net Settlement Amount to the Class Members as set forth in this Article 6 and as ordered by the Court.

**6.2** **Calculation and Allocation of Settlement Payments.** Payments to Class Members shall be calculated by the Settlement Administrator in accordance with the Plan of Allocation as follows:

**6.**2.1 The payments made to class members from the Net Settlement Fund are allocated to reimbursement for alleged loss of health insurance benefits based on the difference between the active employee rate and COBRA for those who were enrolled and out-of-pocket medical expenses for those who were not enrolled. The payments are not back pay.

The distribution among class members will be based on length of service and compensation level. The service component credits one week per year of service, with a minimum of 4 weeks and a maximum of 26 weeks. That number of weeks will be multiplied by that class member's final weekly rate of pay. That product will be divided into the agreed-upon settlement funds (less costs, fees, administrative expenses, and service awards) to determine the class member's pro rata share. An example calculation is set forth below.

| Position | annual rate | service credit | settlement pmt |
|---|---|---|---|
| Single Ply Cutter | 39520.00 | 7 | 1459.53 |
| Industrial Engineer/Cost Technician | 52710.00 | 18 | 5005.69 |
| Dir-Int Logistics/ Planning | 120965.00 | 14 | 8934.83 |

6.2.2 All payments made under this agreement shall be assigned to the date on which they are paid to the individual for purposes of each Class Member's respective State unemployment insurance benefit.

**6.3** This Plan of Allocation is based upon preliminary data regarding the Class Members who may be entitled to settlement payments. If the Settlement Administrator concludes that it is impracticable to implement any provision of this Plan of Allocation, the Settling Parties will modify promptly the terms of

14

this Plan of Allocation and present such modified terms to the Court for its approval. Direct mailed notice to Class Members of such proposed modification of the Plan of Allocation shall not be required. However, notice of such proposed modification shall be posted on the Settlement Website within five (5) business days of the date that the proposed modification is submitted to the Court for its approval. If the proposed modification is implemented, notice of such modification shall be posted on the Settlement Website within five (5) business days of the date that the modification was implemented.

The Settlement Administrator shall be solely responsible for performing any calculations required by this Plan of Allocation.

6.4     Within ten (10) business days of completing all aspects of this Plan of Allocation, the Settlement Administrator shall send to Class Counsel, Defense Counsel, and Defendants one or more affidavits stating the following: (a) the name of each Class Member to whom the Settlement Administrator sent the Settlement Notice and the address of such mailing; (b) the date(s) upon which the Settlement Administrator sent the Settlement Notice   (c) the name of each Class Member whose Settlement Notice was returned as undeliverable; (d) the efforts made by the Settlement Administrator to find the correct address and to deliver the Settlement Notice for each such Class Member; and (e) the name of each Class Member to whom the Settlement Administrator made a distribution from the Net Settlement Amount, together with the amount of the distribution, the name of the payee, the date of distribution, the amount of tax withholdings, if applicable, and the date of remittance of tax withholdings to the appropriate tax authority, if applicable.

6.5     The Settling Parties acknowledge that any payments to Class Members or their attorneys may be subject to applicable tax or other state and local laws. Defendants and Defense Counsel will provide no tax or other advice to the Class Members and make no representation regarding the tax or other consequences of any of the settlement payments described in this Settlement Agreement. To the extent that any portion of any settlement payment is subject to tax or other federal, state, or local claim, the recipient of the payment shall be responsible for payment of such claim. Deductions and withholdings will be made, and reporting will be performed by the Settlement Administrator, as required by law in respect of all payments made under the Settlement Agreement. Flexsteel will not have any separate obligation to pay the employer's share of FICA tax, which shall be paid from the Gross Settlement Amount.

6.6     Each Class Member who receives a payment under this Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state, or local taxes or other claims resulting from or attributable to the payment, including, but not limited to, any unemployment compensation benefit overpayment, if any, received by such person. The employer's share of

15

FICA, referred to in Paragraph 6.5, however, will be paid from the Gross Settlement Amount and Flexsteel will not have any separate or additional responsibility with respect to this tax amount. Each Class Member shall hold Defendants, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from any such liability, including penalties and interest, related in any way to payments under the Settlement Agreement, and shall hold Defendants, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from the costs (including, for example, attorneys' fees and disbursements) of any proceedings (including, for example, investigation and suit), related to such liability.

**6.7** All checks issued in accordance with this Plan of Allocation shall expire no later than one hundred twenty (120) calendar days after their issue date. All checks that are undelivered or are not cashed before their expiration date shall revert to the Qualified Settlement Fund.

**6.8** No sooner than thirty (30) calendar days following the end of the Settlement Period, any Net Settlement Amount remaining in the Qualified Settlement Fund after distributions, including costs and taxes, shall be paid to Iowa Legal Aid.

**7. Article 7 – Attorneys' Fees and Costs**

**7.1** Class Counsel intends to seek to recover their attorneys' fees not to exceed $425,000 including litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, which shall be recovered from the Gross Settlement Amount. Class Counsel also intends to seek Class Representatives' Compensation, in an amount not to exceed $25,000, which will be paid out of the Gross Settlement Amount.

**7.2** Class Counsel will file a motion for an award of Attorneys' Fees and Costs at least thirty (30) days before the deadline set in the Preliminary Order for objections to the proposed settlement, which may be supplemented thereafter.

**8. Article 8 – Release and Covenant Not to Sue**

**8.1** As of the Settlement Effective Date, the Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be deemed to have fully, finally, and forever settled, released, relinquished, waived, and discharged Defendants, the Plan, and all Released Parties from the Released Claims, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed.

**8.2** As of the Settlement Effective Date, the Class Members expressly agree that they, acting individually or together, or in combination with others, shall not

16

sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to an IRS determination letter proceeding, a Department of Labor proceeding, an arbitration or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim on the basis of, connected with, or arising out of any of the Released Claims. Nothing herein shall preclude any action to enforce the terms of this Settlement Agreement in accordance with the procedures set forth in this Settlement Agreement.

**8.3**     Class Counsel and the Class Members may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, if known by them, might have affected the decision to settle with Defendants and the Released Parties, or the decision to release, relinquish, waive, and discharge the Released Claims, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, each Class Member shall expressly, upon the entry of the Final Order, be deemed to have, and by operation of the Final Order, shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims. The Class Members acknowledge and shall be deemed by operation of the Final Order to have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part**.**

**8.4**     Each Class Member hereby stipulates and agrees with respect to any and all Released Claims that, upon entry of the Final Order, the Class Members shall be conclusively deemed to, and by operation of the Final Order shall, settle, release, relinquish, waive and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims pertaining specifically to Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Also, the Class Members with respect to the Released Claims shall, upon entry of the Final Order, waive any and all provisions, rights and benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance to Section 1542 of the California Civil Code.

17

9. **Article 9 – Representations and Warranties**

9.1 The Settling Parties represent:

9.1.1 That they are voluntarily entering into this Settlement Agreement as a result of arm's length negotiations among their counsel, and that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and upon the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof;

9.1.2 That they assume the risk of mistake as to facts or law;

9.1.3 That they recognize that additional evidence may have come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement;

9.1.4 That they have read carefully the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each individual executing this Settlement Agreement on behalf of each of the Settling Parties; and

9.1.5 That they have made such investigation of the facts pertaining to the Settlement and all matters pertaining thereto, as they deem necessary.

9.2 Each individual executing this Settlement Agreement on behalf of a Settling Party does hereby personally represent and warrant to the other Settling Parties that he/she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal that each such individual represents or purports to represent.

10. **Article 10 – Termination, Conditions of Settlement, and Effect of Disapproval, Cancellation, or Termination**

10.1 The Settlement Agreement shall automatically terminate, and thereby become null and void with no further force or effect if:

10.1.1 The Preliminary Order and the Final Order are not entered by the Court in the form submitted by the Settling Parties or in a form which is otherwise agreed to by the Settling Parties;

10.1.2 The Settlement Class is not certified as defined herein or in a form which is otherwise agreed to by the Settling Parties;

10.1.3 This Settlement Agreement is disapproved by the Court or fails to become effective for any reason whatsoever; or

18

10.1.4 The Preliminary Order or Final Order is finally reversed on appeal, or is modified on appeal, and the Settling Parties do not mutually agree to any such modifications.

10.2 If the Settlement Agreement is terminated, deemed null and void, or has no further force or effect, the Class Action and the Released Claims asserted by Class Representatives shall for all purposes with respect to the Settling Parties revert to their status as though the Settling Parties never executed the Settlement Agreement. All funds deposited in the Qualified Settlement Fund, and any interest earned thereon, shall be returned to Defendants, their agents, or insurers pro rata based on their contributions to the Qualified Settlement Fund within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void, except as provided for in Paragraph 10.4.

10.3 It shall not be deemed a failure to approve the Settlement Agreement if the Court denies, in whole or in part, Class Counsel's request for Attorneys' Fees and Costs and/or Class Representatives' Compensation.

10.4 In the event that the Settlement Agreement is terminated, Administrative Expenses incurred prior to the termination shall be paid first from the interest earned, if any, on the Qualified Settlement Fund. Administrative Expenses in excess of the interest earned on the Qualified Settlement Fund shall be split evenly and paid by Class Counsel, on the one hand, and Defendants, on the other hand.

10.5 CAFA notice will be served timely on the appropriate officials by the Settlement Administrator as provided in Paragraph 3.4.3.

10.6 The settling parties stipulate that should the Court refuse to approve the Settlement Agreement that the statute of limitations has been tolled effective December 3, 2021 and that Defendants will not resist a motion by Plaintiffs that is limited in the requested relief to modifying the scheduling order deadlines applicable to this case.

11. **Article 11 – Public Comments Regarding the Class Action or Settlement Agreement**

11.1 Except as set forth explicitly below, the Settling Parties, Class Counsel, and Defense Counsel agree to keep confidential all positions, assertions, and offers made during settlement negotiations relating to the Class Action and the Settlement Agreement, except that they may discuss the negotiations with the Class Members and the Settling Parties' tax advisors, provided in each case that they (a) secure agreements with such persons or entities that such information shall not be further disclosed and (b) comply with this Article 11 in all other respects.

11.2 Class Counsel will establish a Settlement Website on which it will post the following documents or links to the following documents on or following the

date of the Preliminary Order: the operative Complaint, Settlement Agreement and its Exhibits, Settlement Notice, Class Representatives' Motion for Attorneys' Fees and Costs and Award of Compensation to Class Representatives, any Court orders related to the Settlement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Settling Parties ("Settlement Website Information").   No other information or documents will be posted on the Settlement Website unless agreed to in advance by the Settling Parties in writing. Class Counsel will take down the Settlement Website ninety (90) calendar days after the receipt of the affidavit(s) referenced in Paragraph ____.

## 12.    Article 12 – General Provisions

12.1    The undersigned counsel, on behalf of themselves and the Settling Parties, agree to cooperate fully with each other in seeking Court approvals of the Preliminary Order and the Final Order, and to do all things as may reasonably be required to effectuate preliminary and final approval and the implementation of this Settlement Agreement according to its terms. The Settling Parties agree to provide each other with copies of any filings necessary to effectuate this Settlement at least three (3) business days in advance of filing.

12.2    Within sixty (60) calendar days after the Settlement Period, the Settling Parties shall either return to the producing parties, or destroy, all documents produced under a claim of confidentiality in accordance with the Protective Order, including but not limited to documents produced under a claim of privilege. Each Settling Party shall serve a written notice to each producing party certifying that the Settling Party has carried out the obligations imposed by this Paragraph. The Settling Parties, Class Counsel, and Defense Counsel agree that at all times they will honor the requirements of the Protective Order, notwithstanding Settlement of the Action.

12.3    This Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder are not, and shall not be construed as, deemed to be, or offered or received as evidence of an admission by or on the part of Defendants of any wrongdoing, fault, or liability whatsoever by any of Defendants, or give rise to any inference of any wrongdoing, fault, or liability or admission of any wrongdoing, fault, or liability in the Class Action or any other proceeding, and Defendants admit no wrong doing or liability with respect to any of the allegations or claims in the Class Action. This Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder, shall not constitute admissions of any liability of any kind, whether legal or factual.

12.4    Neither the Settling Parties, Class Counsel, nor Defense Counsel shall have any responsibility for or liability whatsoever with respect to (i) any act, omission, or determination of the Settlement Administrator, or any of their respective

20

designees or agents, in connection with the administration of the Gross Settlement Amount or otherwise; (ii) the management, investment, or distribution of the Qualified Settlement Fund; (iii) the Plan of Allocation as approved by the Court; (iv) the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund; (v) any losses suffered by, or fluctuations in the value of, the Qualified Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Qualified Settlement Fund or tax reporting, or the filing of any returns. Further, neither Defendants nor Defense Counsel shall have any responsibility for, or liability whatsoever with respect to, any act, omission, or determination of Class Counsel in connection with the administration of the Gross Settlement Amount or otherwise.

12.5    Only Class Counsel shall have standing to seek enforcement of this Settlement Agreement on behalf of Class Representatives and Class Members. Any individual concerned about Defendants' compliance with this Settlement Agreement may so notify Class Counsel and direct any requests for enforcement to them. Class Counsel shall have the full and sole discretion to take whatever action they deem appropriate, or to refrain from taking any action, in response to such request. Any action by Class Counsel to monitor or enforce the Settlement Agreement shall be done without additional fee or reimbursement of expenses beyond the Attorneys' Fees and Costs determined by the Court.

12.6    Class Counsel, Defense Counsel, and the Settling Parties agree that any and all disputes concerning compliance with the Settlement Agreement, with the exception of any and all disputes concerning compliance with Article 8, shall be exclusively resolved as follows:

12.6.1    If Class Counsel, Defense Counsel, or a Settling Party has reason to believe that a legitimate dispute exists concerning the Settlement Agreement, other than any and all disputes concerning compliance with Article 8, the party raising the dispute shall first promptly give written notice under the Settlement Agreement to the other party including in such notice: (a) a reference to all specific provisions of the Settlement Agreement that are involved; (b) a statement of the alleged non-compliance; (c) a statement of the remedial action sought; and (d) a brief statement of the specific facts, circumstances, and any other arguments supporting the position of the party raising the dispute;

12.6.2    Within twenty (20) days after receiving the notice described in Paragraph 12.6.1, the receiving party shall respond in writing with its position and the facts and arguments it relies on in support of its position;

12.6.3    For a period of not more than twenty (20) days following mailing of the response described in Paragraph 12.6.32, the Settling Parties shall

undertake good-faith negotiations, which may include meeting in person or conferring by telephone, to attempt to resolve the dispute;

12.6.4   If the dispute is not resolved during the period described in Paragraph 12.6.3, the parties shall conduct a mediation of the dispute with the Mediator on the earliest reasonably practicable date; provided, however, that the scope of such mediation shall be expressly limited to the dispute;

12.6.5   Within 30 days after the conclusion of the Mediator's attempt to resolve the dispute (the date of the conclusion of the mediation shall be determined by agreement of the parties or by the Mediator), if the dispute persists, the Settling Parties shall arbitrate the dispute. The Mediator shall serve as the arbitrator.

12.6.6   The Settling Parties intend to resolve any disputes quickly, expeditiously, and inexpensively. Accordingly, there shall be no discovery allowed in connection with mediation or arbitration under Paragraphs 12.6.4 and 12.6.5, and no witnesses shall be presented or examined during the mediation or arbitration except that if the Mediator acting as arbitrator, in his sole discretion, should determine that a limited number of documents or witnesses are needed to resolve the dispute, he may order their production or testimony. The Mediator acting as the arbitrator will make his decision based solely on the papers, documents, testimony, and arguments of counsel presented to him.

12.6.7   If the Mediator acting as the arbitrator finds that a party has not complied with the Settlement Agreement as asserted, the sole remedy that the Mediator acting as the arbitrator may impose is the issuance of an order requiring the offending party to cure such non-compliance.

12.6.8   In any arbitration or mediation under Paragraphs 12.6.4 and 12.6.5, each party shall bear its own fees and costs.

12.6.9   The Mediator acting as the arbitrator shall issue a written determination, including findings of fact, if requested by any party.

12.6.10  Under no circumstances shall the mediator acting as the arbitrator have authority to consider any disputes or order any remedy other than as expressly set forth in Paragraph 12.6.7. The arbitrator's award may be enforced in the Court under federal law governing arbitration awards.

12.7   The Settling Parties agree that the Court has personal jurisdiction over the Settlement Class and Defendants and shall maintain that jurisdiction for purposes of resolving any disputes between the Settling Parties concerning compliance with this Settlement Agreement. Any motion or action to enforce this Settlement Agreement—including by way of injunction—may be filed in the U.S. District Court for the Northern District of Iowa, and or asserted by

22

way of an affirmative defense or counterclaim in response to any action asserting a violation of the Settlement Agreement.

**12.8**   This Settlement Agreement shall be interpreted, construed, and enforced in accordance with applicable federal law and, to the extent that federal law does not govern, Iowa law.

**12.9**   The Settlement Agreement may be executed by exchange of executed signature pages, and any signature transmitted by facsimile or e-mail attachment of scanned signature pages for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. The Settlement Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed an original, and all such counterparts shall together constitute the same instrument.

**12.10**   Each party to this Settlement Agreement hereby acknowledges that he, she, or it has consulted with and obtained the advice of counsel prior to executing this Settlement Agreement and that this Settlement Agreement has been explained to that party by his, her, or its counsel.

**12.11**   Any headings included in this Settlement Agreement are for convenience only and do not in any way limit, alter, or affect the matters contained in this Settlement Agreement or the Articles or Paragraphs they caption. References to a person are also to the person's permitted successors and assigns, except as otherwise provided herein. Whenever the words "include," "includes" or "including" are used in this Settlement Agreement, they shall not be limiting but shall be deemed to be followed by the words "without limitation."

**12.12**   Before entry of the Preliminary Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Settling Parties. Following entry of the Preliminary Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Settling Parties and approved by the Court.

**12.13**   This Settlement Agreement and the exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any party concerning the Settlement other than those contained in this Settlement Agreement and the exhibits thereto.

**12.14**   The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party and specifically waiving such provisions. The waiver of any breach of this Settlement Agreement by any party shall not be deemed to be or construed as a waiver of any other breach or waiver by any other party, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

23

**12.15** Each of the Settling Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that it will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter of this Settlement Agreement.

**12.16** The provisions of this Settlement Agreement are not severable.

**12.17** All of the covenants, representations, and warranties, express or implied, oral or written, concerning the subject matter of this Settlement Agreement are contained in this Settlement Agreement. No party is relying on any oral representations or oral agreements. All such covenants, representations, and warranties set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

**12.18** All of the exhibits attached hereto are incorporated by reference as though fully set forth herein. The exhibits shall be: Exhibit 1  Post Card Notice to class members; Exhibit 2 – Preliminary Order; Exhibit 3 – Long form Notice of Class Action Settlement and Fairness Hearing to Current Participants; Exhibit 4 – Notice of Class Action Settlement and Fairness Hearing to Former Participants; and Exhibit 5 – Final Order.

**12.19** No provision of the Settlement Agreement or of the exhibits attached hereto shall be construed against or interpreted to the disadvantage of any party to the Settlement Agreement because that party is deemed to have prepared, structured, drafted, or requested the provision.

**12.20** Any notice, demand, or other communication under this Settlement Agreement (other than the Settlement Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier;

IF TO THE CLASS REPRESENTATIVES:

    Dorothy A. O'Brien
    O'Brien & Marquard, P.L.C.
    2322 East Kimberly Road, Suite 140S
    Davenport, Iowa  52807


IF TO DEFENDANTS:

    Jesse R. Dill
    Pabst Boiler House
    1243 North 10th Street, Suite 200
    Milwaukee, Wisconsin 53205

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK
SIGNATURE PAGE FOLLOWS**



**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the day and year set forth below.

**PLAINTIFFS**

RODNEY CARROLL

_____          _____
Rodney Carroll                                          Date

TODD VAN DER JAGT

_____          _____
Todd Van Der Jagt                                    Date

JERRY RAY

_____          _____
Jerry Ray                                                   Date

TONY JELINEK

_____          _____
Tony Jelinek                                             Date

STEPHEN ANDERSON

_____          _____
Stephen Anderson                                    Date

FRED MINOR

_____          _____
Fred Minor                                                Date

**DEFENDANTS**

FLEXSTEEL INDUSTRIES, INC.

_____     _____
Signature                               Date

_____     _____
Print                                    Title

JERALD K. DITTMER

_____     _____
Jerald K. Dittmer                    Date

DEREK P. SCHMIDT

_____     _____
Derek P. Schmidt                    Date

50418577.v1-OGLETREE